IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CHARLES A. BALDWIN,                )
        PLAINTIFF                  )
                                   )
v.                                 )        Civil Action No. 11-CV-02033-MSK-KLM
                                   )
                                   )
UNITED STATES OF AMERICA,          )
        DEFENDANT                  )

---

### ORDER OF SPECIAL MASTER

## I.    INTRODUCTION

By Preliminary Order dated March 7, 2012, [**Doc. No. 35**], made final by Minute Order

dated March 15, 2012 [**Doc. No. 37**], Magistrate Judge Kristen L. Mix appointed the undersigned

as Special Master for Discovery "for the purpose of managing and supervising discovery and

resolving discovery disputes." Further, by Minute Order dated March 20, 2012, Magistrate

Judge Kristen L. Mix referred to the undersigned Plaintiff's Motion for Relief Regarding

Discovery Responses and Memorandum ("Motion") [**Doc. No. 40**.].

By e-mail dated April 10, 2012 to Plaintiff, acting *pro se*, and counsel for Defendant, I

offered to hold a telephone hearing in connection with the Motion. Neither party requested a

hearing. Accordingly, as Special Master, I have reviewed the Motion [**Doc. No. 38**],

Defendant's Response thereto ("Response") [**Doc. No. 44**], and Plaintiff's Reply to Defendant's

Response ("Reply") [**Doc. No. 48**] and make the rulings set forth below.

First, a little history. Plaintiff was charged, and convicted on November 22, 2010, in

United States District Court for the District of Colorado by Magistrate Judge Tafoya of three

federal misdemeanors ((1) failure to comply with a lawful order; (2) disorderly conduct-

impeding or disrupting performance of official duties; and (3) attempting to obstruct a peace

1

officer). *See United States of America v. Charles Baldwin*, No. 10-PO-1136-KMT, Amended Judgment, January 21, 2011. The criminal charges arose out of an incident which occurred at and near the Denver Federal Center on April 5, 2010. That conviction is on appeal. *See United States v. Baldwin*, No. 11-cr-00018-PAB.

Plaintiff, acting *pro se*, filed his Complaint August 5, 2011 alleging eight claims under the Federal Tort Claims Act against Defendant, all related to the incident giving rise to his criminal conviction: (1) assault; (2) battery; (3) false imprisonment; (4) abuse of process; (5) malicious prosecution; (6) negligent infliction of emotional distress; (7) intentional infliction of emotional distress; and (8) civil conspiracy. **[Doc. No. 1.]** Subsequently, Plaintiff stipulated to dismiss with prejudice the civil conspiracy claim. There is substantial overlap between the underlying factual circumstances that resulted in the charges of which Plaintiff was convicted and the claims asserted by him in the instant lawsuit, i.e., the same facts and the same April 5, 2010 incident are the basis for both the criminal charges and Plaintiff's claims. According to the Response, Plaintiff received certain discovery in the criminal case, at least some of which he has also requested in this case.[1]

Thereafter, Plaintiff served his First Set for Production of Documents ("First Request") and First Set of Interrogatories on November 25, 2011. On December 12, 2011 Judge Mix entered a Scheduling Order in this matter which limited the parties to 10 depositions per side, 25 interrogatories per side, 25 requests for production per side, and 25 requests for admission per side ("Scheduling Order") **[Doc. No. 16.]**. Thereafter, on December 21, 2011 Defendant responded to the First Request ("Response to First Request"). Then, on January 9, 2012 Plaintiff served his Restated First Set of Requests for Production of Documents ("Restated First Set"),

---

[1] For example, Plaintiff has requested information regarding video recordings pertaining to the April 5, 2010 incident, notwithstanding the fact he introduced such recordings into evidence at his criminal trial. *See* Response, **[Doc. No. 44]**, at 6 and n.13.

and on February 3, 2012 Plaintiff served his Second Set of Requests for Production of Documents ("Second Set").

The First Request contained 44 separate requests for production, a number of which each contained multiple distinct requests. Defendant, relying on the limitation in the Scheduling Order, in its Response to the First Request responded only to the first 20 requests calculating that together they actually comprised 25 requests (e.g., Defendant calculated that Request No. 13 actually contained three separate and distinct requests) and objected to the balance of the requests as exceeding the number fixed by the Scheduling Order. Defendant has also objected to Plaintiff's Restated First Set and Second Set on the ground that they too exceed the limitation of 25 requests fixed by the Scheduling Order.

In the part of the Motion denominated "Requested Relief" Plaintiff first requests that certain "inferences be imposed" against Defendant—essentially asking me to enter a default judgment for alleged discovery abuses by Defendant. It is beyond the scope of the Special Master's authority to grant such relief. Consequently I decline to do so.

Thus, I move on to Plaintiff's alternative requested relief. In 5 of these 8 separate requests for relief—numbers (3), (5), (6), (7), and (8)—Plaintiff asks for a "full response" to certain requests contained in the Restated First Set and in the Second Set. Plaintiff seems unconcerned by the limitation on requests for production in the Scheduling Order. Thus, in the Reply, Plaintiff asserts "Consequently, Plaintiff does not view the numerical limitation for interrogatories without additional review by the court to be a problem." [*See* Reply, [**Doc. No. 48**] at 3.] It is fair to conclude Plaintiff feels the same about the limitation on requests for production. It is also fair to say that much of the effort devoted to the Motion, the Response, and the Reply and this Order was precipitated by Plaintiff exceeding the limitation on requests for

production of documents in the Scheduling Order.

Having said that, it also appears to be the case that Defendant has not been as fulsome in its initial disclosures pursuant to Rule 26 as it might have been, thus contributing to Plaintiff's motivation in filing the Motion and the cost associated with its resolution. Indeed, Defendant acknowledges that it has produced much of the information requested by Plaintiff in the Motion after the Motion was filed, i.e., information regarding Karen Quevli and the requested IG investigation and post-order documents. [*See generally* Response, **Doc. No. 44**.]

It is my hope and expectation as Special Master, that in the future Plaintiff will show greater respect for the limitations in the Scheduling Order, unless and until Magistrate Judge Mix modifies them.[2] So, too, do I hope and encourage Plaintiff to show greater restraint in framing his discovery requests so as to avoid any founded on speculation as to the existence of such evidence.[3] Also, Plaintiff should refrain from seeking evidence previously produced to him in the criminal case. By the same token, it is my hope and expectation that for its part Defendant will promptly produce to Plaintiff any and all nonprivileged matter in its possession called for by Rule 26(a)(1)(A) which it has not yet produced. Put another way, the Defendant should produce forthwith any and all nonprivileged matter in its possession directly related to and arising out of the incident on April 5, 2010 which it has not yet produced.

With all of that said, I now move on to a determination of the Motion and the specific relief requested therein.

---

[2] On April 20, 2012 Magistrate Judge Mix, denied without prejudice as premature **[Docket No. 47]** Plaintiff's Motion to Amend Restirction **[sic]** on Number of Discovery Requests **[Docket No. 45]**.

[3] For example, Plaintiff speculates that there must have been further meetings between FPS officials and Karen Quevli in addition to those which have been disclosed by Defendant. [*See* Reply, **Doc. No. 48**, at 10.]

## II.    REQUESTS FOR PRODUCTION

Plaintiff's primary dispute with Defendant arises out of Defendant's failure to answer certain requests for production contained within Plaintiff's Restated First Set and Second Set. Specifically, in the Requested Relief section of the Motion, paragraphs (3), (5), (6), (7), and (8), Plaintiff requests the following:

- A full response to Restated Request Set, No. 4 and Second Request Set, No. 3, relating to jurisdictional issues.
- A full response to Restated Request Set, Nos. 1 and 2 relating to various manuals, books, reports, and post orders.
- A full response to Restated Request Set, Nos. 1, 4, 5, 7, and 8 and to Second Request Set, Nos. 2 relating to the alteration or destruction of evidence.
- A full response to Restated Request Set, No. 4(b), relating to the IG Investigation; and
- A full response to Restated Request Set, No. 4(a) concerning the processing of the Administrative Claim.

All such requests were objected to by Defendant on the ground that they exceeded the limitation on requests for production imposed by the Scheduling Order.

It is my view that the limitation of 25 requests for production of documents set by Judge Mix in the Scheduling Order applies, without exception, to Plaintiff's First Set, Restated First Set and Second Set. There is simply nothing in the Scheduling Order which can be read as exempting Plaintiff's First Set from the limitation of 25 requests for production because it was served prior to that Order. Therefore, requests beyond the first 25 in the First Set, properly calculated, are barred. So, too, are the Restated First Set and Second Set beyond the limit of 25 requests for production fixed by the Scheduling Order and are therefore also barred.

Thus, all that needs to be determined, in order to dispose of Plaintiff's requests for relief in paragraphs (3), (5), (6), (7), and (8) of the Motion, is whether Defendant properly calculated the first 25 requests in the First Set.  I find that the requests for production that Defendant identified as compound are in fact multiple distinct requests for production disguised as a single

5

request.  Consequently, I agree with Defendant that the first 20 Requests for Production actually constitute 25 distinct requests.  *Cf. Ulibarri v. Denver*, 07-cv-1814-WDM-MJW, 2008 U.S. Dist. LEXIS 93270, *4-5 (D. Colo. Nov. 10, 2008) (collecting cases analyzing compound interrogatories).  Accordingly, I deny the relief requested in paragraphs (3), (5), (6), (7), and (8) of the Requested Relief section of the Motion as those paragraphs relate to Plaintiff's Restated Requests and Second Requests.

## III.    INTERROGATORIES

Next, Plaintiff objects to Defendant's responses to certain interrogatories.  Specifically, in the Requested Relief section of the Motion, paragraphs (1), (2), (4), and (6), Plaintiff requests the following:

- a full response to First Interrogatory Set, No. 1, concerning Michael Frainier;
- a full response to First Interrogatory Set, No. 1, concerning Ms. Donelson;
- a full response to First Interrogatory Set, No. 1, concerning matters or communications concerning the meeting with Karen Quevli; and
- a full response to First Interrogatory Set, Nos. 1 and 3 concerning alteration of evidence.

I address each of Plaintiff's requests in turn.

### A.    Interrogatory No. 1 re: Michael Frainier

With respect to Michael Frainier, in the Response, Defendant notes that it supplemented its disclosure with respect to Mr. Frainier's information and indeed it appears to have done so. Consequently, I find that the issue with respect to Mr. Frainier is moot and therefore deny the Motion in this regard.

### B.    Interrogatory No. 1 re: Ms. Donelson

Similarly, with respect to Ms. Donelson, in the Response, Defendant notes that Ms. Donelson is an administrative assistant employed by the Federal Protective Services (FPS) and was merely copied on e-mail correspondence to facilitate the organization of documents.

Accordingly, she has no personal knowledge of the facts and circumstances giving rise to Plaintiff's Complaint. In the Reply, Plaintiff accepts Defendant's answer. Consequently, I find that any issue with respect to Ms. Donelson is also moot and therefore deny the Motion in this regard.

### C.   Interrogatory No. 1 re: Karen Quevli

Plaintiff also complains about Defendant's response to Interrogatory No. 1 with respect to information pertaining to a meeting between Assistant District Attorney Karen Quevli and FPS officials. On March 26, 2012, Defendant provided a supplemental response that described the meeting between FPS personnel and Ms. Quevli. In the Reply, Plaintiff takes issue with this response, hypothesizing that there must have been more to the meeting than what is set forth in Defendant's discovery response. In essence, Plaintiff claims, without any evidence to support his assertion, that Defendant must be withholding additional information.

As an initial matter, I find that Defendant's relevance objection is unfounded. Indeed, under F.R.C.P. 26, the scope of discovery is broad, and extends to "any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1). Nevertheless, Defendant appears to have adequately responded to Plaintiff's interrogatory. Notwithstanding Plaintiff's speculation that Defendant is withholding additional information, based on the information before me, I cannot find Defendant's response to Plaintiff's interrogatory to be deficient. If subsequent discovery reveals that Defendant has withheld responsive, nonprivileged information, the matter can be further addressed at that time. But, based on the record as it exists today, I deny Plaintiff's motion with respect to information regarding the meeting between FPS personnel and Ms. Quevli.

**D.    Interrogatory No. 3 re: Destruction of Evidence**

Finally, Plaintiff takes issue with Defendant's response to Interrogatory No. 3.   That interrogatory states:

> Please identify all persons with knowledge of, or who may have knowledge of, any matters or communications related to the destruction or alteration of documents, records, material, or information which was requested pursuant to Federal Rules of Civil Procedure, Rule 34, with respect to this civil proceeding but was not produced, describe each such communication.

Defendant responded as follows:

> [Objections omitted] After reasonable inquiry, there is only one document to which this interrogatory may refer—a violation notice ending in "68" referred to by Commander Lundy during the criminal trial.  As Commander Lundy testified, when he began to "write the violation notice [he] wrong the wrong date on there." *Baldwin*, No. 10-po-01136-KMT, Tr. at 68.   Then, following standard procedure, he "wrote void across it in bold letters and then put it through a shredder." *Id.*  Accordingly, the United States will construe this interrogatory to refer to the violation notice just referenced.

Apparently, Plaintiff is unsatisfied with this response.   In the Reply, Plaintiff states, "Given the admitted behavior of Inspector Lundy in destroying evidence, it is relevant to investigate the other evidence which Inspector Lundy may have altered." [Reply, Doc. No. 48, at 9.]  Again, however, Plaintiff's unsubstantiated speculation about other evidence that *may* have been altered or destroyed is insufficient to justify granting the Motion.   Indeed, Plaintiff may very well be asking me to compel Defendant to produce documents and information that do not exist.  Plaintiff is entitled to complete responses to his discovery requests, but that does not mean he is entitled to the responses he wishes to hear.  Accordingly, with respect to Interrogatory No. 3, I deny the Motion.

## IV.   REQUEST FOR ENTRY

Notwithstanding that Defendant, in its Response to Plaintiff's Request for Entry on Land and Inspection of Objects Under Rule 34, offered to allow Plaintiff certain rights of inspection pursuant to specified terms and conditions, in paragraph (6) of the Requested Relief portion of the Motion, Plaintiff requests a "full response" to First Entry Request Nos. 1 and 2.  First Entry Request Nos. 1 and 2, as a general matter, relate to Plaintiff's attempts to inspect the scene of his arrest and the law enforcement equipment utilized by Defendant in connection with that arrest.

I cannot tell from the record before me whether Plaintiff has taken up Defendant's offers. Although Plaintiff mentioned his First Entry Request in the Requested Relief portion of the Motion, the body of the Motion does not actually identify what the dispute is.  Nor does Defendant address the issue in the Response.  And, there is no mention of the issue in the Reply, either.  Thus, I simply do not know what the parties' disagreement is, if any, regarding this matter.  Consequently, I deny Plaintiff's request, without prejudice.  To the extent there remains a dispute surrounding Plaintiff's First Entry Request, Nos. 1 and 2, I order the parties to confer in an attempt to reach a mutually agreeable solution.  If, after a ***good faith*** effort to confer the parties are unable to resolve the disagreement, they may resubmit the matter for my consideration.

## V.   THE PRIVILEGE ISSUES

Finally, Plaintiff asserts that Defendant improperly withheld from production a number of documents Defendant contends are protected by one or more privileges.  As an initial matter, I note that Plaintiff's primary concern relates to a purported failure to respond to Restated Request Set, No. 4(a) and (b).  For the reasons discussed above, Plaintiff's so-called "Restated Requests"

improperly exceed the number of requests for production allowed by the scheduling order. I therefore deny the Motion in this regard.

In addition to Plaintiff's objection to Defendant's refusal to answer Restated Request Nos. 4(a) and (b), Plaintiff also argues that Defendant has failed to adequately describe documents listed in its privilege log, apparently claiming that Defendant has waived its right to assert privilege over **all** documents listed therein, with the exception of AUSA Bergsiecker's or his secretary's notes.

### A.   Law Enforcement Privilege

First, Plaintiff asserts that Defendant improperly asserted the law enforcement privilege over the final IG investigation report concerning Commander Lundy and post-orders provided by Defendant to DECO, Inc., all of which appear in Defendant's privilege log. However, Defendant has since produced such documents subject to protective order. Thus, I deny the Motion as moot with respect to this issue.

### B.   Attorney-Client Privilege and Work Product Doctrine

Second, without identifying the specific documents in question, Plaintiff challenges Defendant's withholding of certain documents based on the attorney-client privilege and/or work product doctrine. Plaintiff's primary objection to Defendant's assertion of the attorney-client privilege communications is that there is not actually an attorney listed as an author or recipient.

As an initial matter, Plaintiff's failure to identify the specific documents he seeks makes it difficult for me to meaningfully analyze Defendant's privilege claims. I agree with Defendant, however, that Plaintiff appears to be concerned with the following documents, based on the fact that no attorney is identified as an author or recipient of the communication: BaldwinCivil00683, 698–702, 703–08, 709–11.

The attorney-client privilege "protects communications made in confidence between the client and the attorney from discovery . . . ." *EEOC v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 610 (D. Colo. 2008).  In the context of the federal government, "[f]or purposes of applying the attorney-client privilege, a federal agency qualifies as a 'client' and federal agency counsel function as attorneys." *Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 792 (Ct. Fed. Cl. 2007).  "In addition, whenever the United States, its agencies, or officers are involved in litigation, an attorney-client relationship exists between DOJ attorneys and an affected federal agency and its officers." *Id.*  Furthermore, communications between the client and representatives of the attorney, such as paralegals or secretaries, are also privileged.  *See Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 563 (N.D. Ill. 2007).

Additionally, the work product doctrine protects from disclosure materials "prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."  F.R.C.P. 26(b)(4)(A).  The work product doctrine's purpose is to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Robles*, 422 U.S. 225, 238 (1975).

Plaintiff's complaint that the descriptions are inadequate and thus the privilege is waived is unfounded.  Take as an example the description of BaldwinCivil00683.  In addition to identifying the author and recipient of the communication and the basis for claiming the privilege, Defendant describes the communication as follows: "June 10, 2010 e-mail and reply requesting information to respond to Plaintiff's FTCA claim."  I find that such descriptions are sufficient for the purposes of the attorney-client privilege and work product doctrine and therefore conclude that Defendant has met its burden of demonstrating the privileged nature of the documents in question.  Defendant does not need to re-produce the entire content of the

communication in order to sufficiently describe the communication.  Such a requirement would defeat the purpose of the attorney-client privilege in the first place.

Furthermore, to the extent Plaintiff claims there has been a waiver of the privilege with respect to certain communications, I cannot address such a contention in a vacuum.  Plaintiff is correct that "a party who voluntarily discloses privileged communications waives the privilege as to all other communications dealing with the same subject matter."  *Equity Residential*, 246 F.R.D. at 563.  But, analysis of waiver must be made on a case by case basis.  *See id.*  Because Plaintiff has not identified specific communications, the confidentiality of which he believes to have been waived, I decline to address the issue.  If there are *specific* communications as to which Plaintiff believes the attorney-client privilege does not apply because of waiver, I will consider such a contention after the parties engage in a good faith conferral regarding the same. This should *not*, however, be taken as an invitation for Plaintiff to come before me with a claim that waiver applies to "all" communications listed in Defendant's privilege log.   For these reasons, I deny the Motion insofar as he seeks the disclosure of documents protected by the attorney-client privilege or work product doctrine.

## VI.    RULINGS

1.    For the reasons stated above, the Motion is denied as to the relief sought with respect to the Restated First Set and the Second Set [Requested Relief paragraphs (3), (5), (6), (7) and (8).]

2.    For the reasons stated above, the Motion is denied as to the relief sought with respect to First Interrogatory Set, Nos. 1 and 3 [Requested Relief paragraphs (1), (2), (4), and (6).]

3.      For the reasons stated above, the Motion is denied without prejudice with respect to the relief sought with respect to First Entry Request Nos. 1 and 2 [Request Relief paragraph (6).]

4.      For the reasons stated above, the Motion is denied insofar as it seeks the discovery of information and documents protected by the attorney-client privilege or work product doctrine.

5.      Both parties have requested that I assign the entire amount of my costs to the other party.  While I am mindful of the fact that the Motion is being denied, essentially in its entirety, part of this is due to the fact that Defendant produced much of what Plaintiff seeks in response to the Motion resulting in the denial as moot of certain of Plaintiff's requests. Consequently, I cannot find that Defendant is entirely blameless for the disputes giving rise to a Motion.  However, as noted above, many of Plaintiff's arguments are based upon his failure to respect the Scheduling Order's limitation on requests for production.  For these reasons, I order that my costs as Special Master with respect to disposition of the Motion be allocated between the parties as follows:

- One-third to be borne by Defendant

- Two-thirds to be borne by Plaintiff


SO ORDERED THIS 4th day of May, 2012 at Denver, Colorado.


Neil Peck
Special Master